McKinney, J.
delivered the opinion of the court.
The amended Constitution of this State, art. 10, sec. 4, confers upon the Legislature the power to establish new counties, under certain specific restrictions, one of which is, that “ no line of such county shall approach the courthouse of any old county, from which it may be taken, nearer than twelve miles.” We are called upon in this case to expound the proper meaning and construction of the foregoing clause.
The question arises upon the following state of facts. The Legislature, by the act of 1844, chap. 204, established the county of Grundy, out of parts of Warren and Coffee counties. The boundaries of the county are defined in the act: and in reference to Coffee county, it is provided, that the line shall be run, “so as not to approach Manchester (the county-seat of Coffee county) nearer than twelve miles.” The Legislature, by a subsequent act, passed in 1846, and after the organization of Grundy county, took *589 a portion of tbe territory of Coffee county, embracing two civil districts, and annexed it to the county of Grundy, whereby the line of the latter county was made to approach within less than twelve miles of Manchester.
This bill is brought to have the act of 1846, attaching said two districts to Grundy county, declared void. And it was so declared by the Chancellor, and we think properly. It must have been foreseen by the framers of the Constitution, that unless the power to establish new counties were carefully circumscribed and guarded, great and irreparable injury might not unfrequently be done, not only to the public, but also to individual interests in the counties whose territory should be taken to establish such new counties. One of the most prominent of which perhaps was, the necessity which .might thereby be forced upon such old counties to change the location of their courthouses and county seats. To guard against so serious an evil, was unquestionably one of the principal motives which caused the restriction, contained in the clause in question, to- be incorporated into the Constitution. And we construe it to be an absolute prohibition of the power, on the' part of the Legislature, either in the establishment of a new county, or in taking from one county a portion of its territory and attaching it to another, or in changing the lines of adjoining counties, to approach the courthouse of the county, whose territory is taken for either of the foregoing purposes, nearer than twelve miles. The restriction in question was designed to be a perpetual guaranty against legislative encroachment in whatever mode it might be attempted. And it is manifest that upon any other construction, the restriction would be utterly inoperative and unmeaning.
*590 The argument opposed to this construction, would leave it in the power of the Legislature to do that by indirection, which might not be done directly. It is admitted, that to have done by the act of 1844 by which the county of Grundy was established, what was done by the subsequent act of 1846, would have been a palpable and undisguised violation of the Constitution. And if so, by what process of reasoning can it be maintained, that a power expressly prohibited in the former instance, might be properly exercised in the latter? surely the reason of the constitutional prohibition had lost nothing of its force, much less ceased to exist. And if, in the establishment of the county, the Legislature could not have enlarged the area of the new county, so as to have approached the town of Manchester nearer than twelve miles, upon what principle of construction can it do so at a subsequent session, so as to approach the town within eight miles ? The object is to secure the counties from having their county-seats approached nearer than twelve miles; and this object can no more be defeated, upon the pretext of enlarging anew county, after its organization, than in its original establishment. The restriction upon the legislative power is alike operative and imperative in the one instance as in the other. If the reasoning on the other side were correct, it is obvious that the Legislature, by a series of aggressive enactments, from timé to time, might encroach upon any and every county, until the line of the new county should be made to approach the very limits of the county-seat of the old county; for if the court-house may be approached, upon any pretext, nearer than twelve miles, the constitutional restriction ceases to be operative, and the power to encroach is without limitation. Such an approach to the *591 county-seat, leaving the court-house at or near the extreme verge of the county, would necessarily produce so much public inconvenience, such inequality of burden and benefit among the citizens of the county, and such deep and general discontent, as would of necessity force a change of the county-seat, and thereby bring about all the evils to the public, and the invasions of private rights, which the clause of the Constitution was intended to prevent.
A constitutional provision, so wise and salutary in itself, so indispensably necessary for the protection of important interests, public as well as private, and no less essential to the quiet and repose of local communities, cannot be disregarded or evaded in the mode attempted in this case.
We are of opinion that the act of 1846, chap. 134, is wholly unconstitutional and void, and, therefore, affirm the decree of the Chancellor.